UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __23-8520-BER__

UNITED STATES OF AMERICA

v.

BRADLEY FORREST ZUCKER,

                **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  ___ Yes  ✓ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ___ Yes  X No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____
DANIEL. E. FUNK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.      0592501
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:        (305) 905-7509
Fax:       (561) 820-8777
Email:    daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
| | ) | Case No.   23-8520-BER |
| BRADLEY FORREST ZUCKER, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of on or between September 23 and October 2, 2023 in the county of Palm Beach in the Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(viii), and 846 | Possession and attempt to possess a controlled substance with intent to distribute (more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine) . |
| 18 U.S.C § 924(c)(1)(A) | Possession of a firearm in furtherance of a drug trafficking crime. |

This criminal complaint is based on these facts:

See Attached Affidavit

FILED BY ____TM____ D.C.

Oct 20, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

☑ Continued on the attached sheet.

*Tyler Robichaud*
Complainant's signature

TYLER ROBICHAUD, DEA TFO
*Printed name and title*

Subscribed and sworn to by FaceTime/Telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) this ____ day of October 2023, in West Palm Beach, Florida.

Date: October 20, 2023

*Bruce Reinhart*
Judge's signature

City and state:   West Palm Beach, FL

BRUCE E. REINHART, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Tyler Robichaud, a Task Force Officer with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, do hereby depose and state as follows:

## BACKGROUND OF THE AFFIANT

1. I am a deputized Task Force Officer with the United States Drug Enforcement Administration (hereinafter referred to as "DEA"). As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I joined the DEA Task Force in March 2023. I am currently assigned to conduct investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include heroin, cocaine hydrochloride, "crack" cocaine, methamphetamine, and crystal methamphetamine.

2. I have been a sworn police officer with the Jupiter Police Department since 2020. I successfully completed the Criminal Justice Standards and Training Police Academy, and I am a certified law enforcement officer. Prior to my service with the Jupiter Police Department, I was a certified police officer with the Town of Palm Beach Police Department from 2018 to 2020. I am currently assigned as an Agent in the Street Crimes Unit, and from there to the Drug Enforcement Administration (DEA) Task Force Group. I have received specialized training about narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances.

3. As a Task Force Officer with the DEA, I have conducted investigations and have

been instructed in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841 843(b), 856, 846, 959(d) and 963, respectively.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other DEA agents and law enforcement officers, and from my discussions with witnesses involved in the investigation. I have also reviewed records and reports relating to the investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, it does not purport to describe everything known to your affiant concerning the investigation.

## PURPOSE OF THIS AFFIDAVIT

5. This affidavit is submitted in support of a criminal complaint charging Bradley Forrest ZUCKER with possession and attempt to possess a control substance with intent to distribute, namely over five-hundred (500) grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846; and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, section 924(c)(1)(A).

## PROBABLE CAUSE

6. On or about September 26, 2023, United States Postal Inspection Services (USPIS) Task Force Officer (TFO) Henry Ramos was conducting proactive searches on postal databases

and identified a parcel bearing common characteristics to parcels containing narcotics. The parcel had a USPS priority tracking number 9405 5362 0624 8403 8537 35 and was addressed to "Brad Zucker, 1499 S. Federal Hwy. Unit 348, Boynton Beach, FL, 33435-6080." The return address was addressed to "Marco Davenport, 2828 East St., Selma, CA, 93662."

7. On September 27, 2023, following a positive alert by a narcotics-trained canine and pursuant to a federal search warrant (Case no. 23-mj-8497-RMM), the parcel was opened. Within the parcel, law enforcement recovered 1,275.4 grams of round orange pills. Based upon the agents' training and experience, as well as field testing, the substance found inside the parcel was identified as methamphetamine, a Schedule II controlled substance.

8. On September 29, 2023, agents obtained a federal search warrant authorizing the installation and use of a tracking device for the parcel (Case No. 23-8500-BER), as well as an anticipatory search warrant (Case no. 23-8501-BER). On October 2, 2023, federal and local agents attempted to conduct a controlled delivery of the parcel which was filled with sham narcotics weighing over one kilogram. The intended recipient was Bradley ZUCKER, who resides at 1499 South Federal Hwy, Apt 348, Boynton Beach, Florida.

9. At approximately 10:55 a.m., an undercover USPIS inspector approached and knocked on the front door of ZUCKER's residence. Despite the attempt, there was no response from anyone inside. Consequently, the undercover USPIS inspector decided to leave the parcel in front of ZUCKER's residence. The location was strategically chosen to ensure an unobstructed view for a covert recording device that had been strategically placed.

10. At approximately 1:10 p.m., agents from the DEA observed G.C., a white female, within the vicinity of the residence door. G.C. was dressed in a dark colored hat, a green long-sleeved shirt, and dark colored pants. She was observed walking in a westerly direction along the

hallway, eventually approaching the entrance of the residence. G.C. displayed a noticeable interest in the parcel, as she directed her gaze towards it. After a brief pause, she moved away from the residence momentarily, only to return and knock on the residence door. With no response forthcoming, G.C. took hold of the parcel and proceeded to walk in a westerly direction along the hallway.

11.     Shortly thereafter, agents with the DEA successfully located G.C., who was still dressed in the same attire and carrying a black backpack walking east along the sidewalk outside the north end of the building. Agents then initiated a consensual encounter with G.C. to ascertain whether she had indeed picked up the parcel. During the encounter, agents directly asked G.C. if she had taken possession of the parcel. She openly admitted to having picked up the parcel. Furthermore, she disclosed that she had subsequently opened the parcel on the second floor and removed what she believed to be Adderall, because she had purchased Adderall from ZUCKER on prior occasions. G.C. provided verbal consent to search her backpack. Agents located the sham narcotics which had been previously packaged inside the parcel.

12.     G.C. was promptly detained by agents and transported to a secure facility for the purpose of conducting an interview. Following *Maranda* warnings, she admitted to picking up the parcel based on her assumption that it contained illegal drugs. She went on to clarify that she had previously purchased Adderall pills from ZUCKER at his residence and mostly recently bought Adderall from ZUCKER on Saturday, September 23, 2023.

13.     Additionally, G.C. stated that during her visit to Zucker's residence on Saturday, September 23, 2023, she had seen three large bags filled with Adderall pills stored inside ZUCKER's safe. G.C. stated she also saw marijuana, Xanax, and cocaine on several other occasions while inside ZUCKER's residence. Notably G.C. had previously observed several

4

firearms visibly scattered throughout the residence on Saturday, September 23, 2023. She specifically mentioned that ZUCKER possessed an assault rifle in addition to several handguns.

14. On October 2, 2023, ZUCKER's mother informed agents that her son had been admitted to the Delray Medical Center in Delray Beach, Florida. On the same date, agents approached ZUCKER in room at the Delray Medical Center. Present in the room were his mother and father. Prior to initiating any questioning, USPIS TFO Ramos explicitly informed ZUCKER that he had the right to refrain from speaking with him or providing answers to his inquires. USPIS TFO Ramos clarified that ZUCKER was not under any form of detainment and the interview was digitally recorded. During the interview, ZUCKER openly confessed to having purchased his Adderall supply several months ago from a dark web vendor.

15. DEA TFO Kopplin asked ZUCKER about the contents of the safe located in his apartment. In response, ZUCKER informed TFO Kopplin that the safe contained only marijuana. TFO Kopplin asked for the code to access the safe, to which ZUCKER explained that it was a biometric safe requiring his fingerprint for unlocking. Additionally, ZUCKER informed TFO Kopplin that a key for the safe was hanging on a key ring near the apartment door on the wall. Furthermore, ZUCKER advised he has firearms inside the safe as well. Prior to concluding the interview, ZUCKER willingly granted verbal consent for a search of his apartment.

16. On October 2, 2023, USPIS TFO Ramos obtained a federal search warrant from the Honorable Judge William Matthewman (Case No. 23-MJ-8504-WM) to search ZUCKER's residence.

17. On the same date, at approximately 5:20 p.m., DEA Task Force agents executed the residential search warrant for ZUCKER's residence. In the living room, agents located a black

safe, which had a biometric style lock. On a key ring next to the entry door, agents obtained a key which was used to open the safe.

18. Agents were able to open the safe and located the following items:

- Clear vacuum-sealed bag containing round orange pills imprinted with the number "30" which appeared to be counterfeit Adderall and weighing approximately 751.5 grams (including packaging), field test positive for methamphetamine
- Orange triangular shaped pills imprinted "CP 30"
- Clear bag containing blue rectangular shaped pills imprinted "B707" (Alprazolam), weighing approximately 36.5 grams
- Sig Sauer handgun Model "P320" Serial number 58J086134
- Sig Sauer handgun Model "P365" Serial number 66B546993

19. Within the master bedroom area, agents located the following items:

- Blue circular shaped pills imprinted "80" weighing approximately 45 grams
- 9mm ammunition

20. Based on my training and experience, the quantity of methamphetamine pills found inside ZUCKER's residence are consistent with distribution and not personal use. Typically, users consume methamphetamine in small amounts, such as gram amounts or singular pills, whereas ounce to kilogram quantities are more commonly associated with distribution and indicative of the possessor being a source of supply for other narcotics distributors and users.

21. Based on my training and experience and the experience of other agents, I am aware that drug distributors possess firearms for the purpose of protecting themselves, their controlled substances, and the money derived from the sale of controlled substances.

22. The Drug Enforcement Administration Southeast Laboratory conducted chemical testing of the round orange pills, imprinted with the number "30" which appeared to be counterfeit Adderall, that were found in the safe at ZUCKER's residence. The pills were determined to be methamphetamine with a net weight of 701.5 grams.

## CONCLUSION

23. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that on or between September 23, 2023, and October 2, 2023, ZUCKER did commit the following criminal offenses: possession and attempt to possess a control substance with intent to distribute, namely over five-hundred (500) grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846; and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, section 924(c)(1)(A).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Tyler Robichaud*
Tyler Robichaud
Task Force Officer, DEA

Sworn to and attested by Telephone-Facetime per Fed. R. Crim. P. 4(d) and 4.1 on this __20__ day of October 2023.

*Bruce Reinhart*
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: BRADLEY FORREST ZUCKER

**Case No**: 23-8520-BER

**Count 1:**

Possession and Attempt to Possess With Intent to Distribute a Controlled Substance
(more than 500 grams of methamphetamine)

21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment:** 10 years
* **Max. Supervised Release:** a minimum of 5 years up to life
* **Max. Fine:** $10,000,000

**Count 2:**

Possessing a Firearm in Furtherance of a Drug Trafficking Crime

18 U.S.C. § 924(c)(1)(A)
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment:** 5 years consecutive to any other sentence
* **Max. Supervised Release:** 5 years
* **Max. Fine:** $250,000

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.